UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SECURA INSURANCE, | ) | |
| | ) | |
|     Plaintiff/ | ) | |
|     Counterclaim Defendant, | ) | |
| | ) | |
|     v. | ) | Case No. 4:18 CV 1315 CDP |
| | ) | |
| JANET NORTHINGTON, | ) | |
| | ) | |
|     Defendant/ | ) | |
|     Counterclaim Plaintiff. | ) | |

## **MEMORANDUM AND ORDER**

In October 2013, Janet Northington was involved in a motor vehicle accident and sustained bodily injuries with damages exceeding $245,000. The at-fault driver had a $100,000 limit for liability under her automobile insurance policy, and Northington recovered this amount from the driver's insurer. Given that her damages exceeded the at-fault driver's policy limit, Northington sought to recover under the underinsured motorist (UIM) provision of her own automobile policy issued by Secura Insurance, which had UIM coverage up to $100,000 for bodily injury per person. Secura contends that the at-fault driver's vehicle does not meet the policy definition of "underinsured motor vehicle" because that vehicle's coverage was not less than the limits of Secura's UIM coverage. Northington argues that other policy provisions render the UIM provision ambiguous.

Secura filed this declaratory judgment action in diversity seeking a declaration that it is not obligated to pay any amount to Northington under the insurance policy. Northington filed a counterclaim, alleging breach of contract and seeking a declaration that Secura owes her the full amount of UIM coverage under the policy, that is, $100,000. She also brings claims of vexatious refusal to pay, fraud, and unjust enrichment.

Both sides move for summary judgment on the claims regarding UIM coverage under the insurance policy. Because Northington is not entitled to recover under the unambiguous UIM provision of her policy, I will grant summary judgment to Secura on the policy-coverage claims. I will also grant Secura's motion to dismiss Northington's remaining claims.

**Legal Standard**

In determining whether to grant summary judgment, I must view the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit or other evidence, set forth specific facts

showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal-Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

**Evidence Before the Court on the Motions**

On October 2, 2013, Celia Lomax rear-ended Janet Northington's vehicle while Northington was driving northbound on Highway 47 in Franklin County, Missouri. This impact caused Northington to cross over into oncoming traffic and be struck a second time. As a result of the accident, Northington sustained bodily injuries with damages exceeding $245,000. At the time of the accident, Lomax was insured by an automobile insurance policy with applicable limits of liability totaling $100,000. Northington recovered the policy limit – $100,000 – from

Lomax's insurer.  At the time of the accident, Northington was insured under Policy Number PX 270-48-17 (the Policy), an automobile insurance policy issued by Secura, which itself had a $100,000 limit for UIM coverage.  Northington was driving a vehicle insured under the Policy at the time of the accident.

As is relevant to this action, the Policy stated as follows:

**PART C-2  UNDERINSURED MOTORISTS COVERAGE**

**INSURING AGREEMENT**

**A.** We will pay compensatory damages which an *insured* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of *bodily injury*:

    1.    Sustained by an *insured*; and
    2.    Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the *underinsured motor vehicle*.

ECF 1-1 at p. 57 (emphasis in original).  The Policy defined "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of an accident but its limit for bodily injury liability is less than the limit of liability for this coverage." *Id.* at p. 58.  It is undisputed that the UIM limit in the Policy was $100,000.  Accordingly, under the plain language of the Policy, a vehicle is not "underinsured" if it is covered by an insurance policy with a limit of $100,000 or more.

The UIM provision of the Policy also had a "Limit of Liability" section:

**LIMIT OF LIABILITY**

**A.** The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of *bodily injury* sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for *bodily injury* resulting from any one accident.

This is most we will pay regardless of the number of:

1. *Insureds*;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

**B.** **Reducing Clause.** The limit of liability shall be reduced by all sums paid because of the *bodily injury* by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this coverage part.

This coverage, when combined with any amounts paid by liability policies or bonds applicable to the owner or driver of an *underinsured motor vehicle*, will provide coverage up to the amount stated in the Declarations.

ECF 1-1 at pp. 58-59 (emphasis in original).

Finally, the "**OTHER INSURANCE**" provision of the Policy, as set out in the Policy and in the Mile-Stone Package endorsement,[1] stated:

If there is other underinsured motorists insurance available under one or more policies or provisions of coverage:

. . .

---

[1] Northington paid extra premiums for this "Mile-Stone Package."

>    2. . . . any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for *your covered auto*, shall be excess and will apply only in the amount our underinsured motorists limit of liability exceeds the sum of the limits of liability of all other applicable insurance. We will pay only after all other applicable limits have been paid.

ECF 1-1 at pp. 11, 59 (emphasis in original).

The parties do not dispute that the applicable policy limit of the at-fault driver's insurance was $100,000 and that Northington recovered the policy limit from the driver's insurer. Nor do the parties dispute that the UIM policy limit of Northington's insurance was $100,000. Because the at-fault driver's policy limit equaled and was not less than the limit of Northington's UIM coverage, Secura contends that the Policy's UIM provisions do not apply here because, by definition, the at-fault driver was not operating an "underinsured motor vehicle." Northington argues that the Policy, when read as a whole, is ambiguous with regard to when UIM coverage is provided and the amount of such coverage. Given this ambiguity and the amount of damages she sustained, Northington contends she is entitled to the full amount of UIM coverage under the Policy, that is, $100,000.

**Discussion**

Because this is a diversity case, I apply state substantive law and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996). The parties agree that Missouri law controls. Accordingly, I must apply Missouri law as declared by the Supreme Court of Missouri and may not disregard

decisions of the Missouri Court of Appeals. *International Envtl. Mgmt., Inc. v. United Corp. Servs., Inc.*, 858 F.3d 1121, 1125 (8th Cir. 2017).

In Missouri, there is no statutory requirement that an automotive insurance contract contain UIM coverage, so its existence is determined by the contract entered into between the parties. *Rodriguez v. General Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. banc 1991). Under Missouri law, general rules of contract construction apply when interpreting an insurance policy. *Todd v. Missouri United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. banc 2007). "The key is whether the contract language is ambiguous or unambiguous." *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993). "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007); *see also Rodriguez*, 808 S.W.2d at 383.

If ambiguity exists, I must interpret the policy in favor of the insured. *Todd*, 223 S.W.3d at 160. "'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions.'" *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quoting *Seeck*, 212 S.W.3d at 132). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." *Ritchie v. Allied Prop. & Cas. Ins. Co.*, 307 S.W.3d 132, 135

(Mo. banc 2009). I must "endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant," *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008); and I must apply "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance[.]" *Seeck*, 212 S.W.3d at 132 (internal quotations marks and citation omitted). "'A contract or provision . . . is not ambiguous merely because the parties disagree over its meaning.'" *Gohagan v. Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016) (quoting *Atlas Reserve Temps., Inc. v. Vanliner Ins. Co.*, 51 S.W.3d 83, 87 (Mo. Ct. App. 2001)).

Under the plain language of the Policy, the at-fault driver was not an underinsured motorist because she had insurance coverage equal to the Policy's limit of liability for UIM coverage. The Policy defines "underinsured motor vehicle" as a "land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of an accident but *its limit for bodily injury liability is less than the limit of liability for this coverage*." (Emphasis added.) It is undisputed that the at-fault driver had an applicable policy limit for liability of $100,000 and, further, that Northington had UIM coverage of $100,000. Therefore, under the unambiguous provision of the Policy, the at-fault driver was not an underinsured motorist.

In its most recent decision on this issue, the Missouri Supreme Court

reached the same conclusion on a nearly identical definition of "underinsured motorist." *Swadley v. Shelter Mut. Ins. Co.*, 513 S.W.3d 355 (Mo. banc 2017). In that case, the Swadleys had an insurance policy with UIM coverage in the amount of $100,000. The policy defined "underinsured motor vehicle" as "a motor vehicle covered by a liability bond, governmental liability statute, or insurance policy, applicable to the occurrence; but the monetary limits of that bond, statutory coverage, or policy, are less than the limits of underinsured motorists coverage shown in the Declarations." *Id.* at 356. The Missouri Supreme Court held that the "clear and intentional effect of this definition is that UIM coverage will not apply when the underinsured motorist has liability coverage equal to or greater than $100,000." *Id.* In rejecting the Swadleys' arguments that the policy language was ambiguous, the Missouri Supreme Court reasoned as follows:

> Nowhere does this policy expressly promise UIM coverage under every circumstance, and nowhere does it promise UIM coverage when the underinsured motorist has liability coverage equal to or greater than the UIM limit. Therefore, the policy is not rendered ambiguous by the fact that the policy's definition of "underinsured motor vehicle" restricts UIM coverage to applying only when the underinsured motorist has liability coverage less than the UIM limit . . . .
>
> The definition of "underinsured motor vehicle"—and consequently, when this policy's UIM coverage applies—is clear and unambiguous within the context of the policy as a whole. Indeed, this Court previously rejected the argument that a nearly identical definition of "underinsured motor vehicle" rendered a policy ambiguous. *See Rodriguez v. Gen. Accident Ins. Co. of Am.*, 808 S.W.2d 379, 382-83 (Mo. banc 1991).

> . . . Evaluating the policy as a whole, UIM coverage unambiguously does not apply when, as here, the underinsured motorist has liability coverage equal to or greater than $100,000.

*Id.* at 357-58. The same reasoning applies here. The Policy's UIM coverage unambiguously does not apply because the at-fault driver had liability coverage that equaled the Policy's coverage of $100,000.

The Missouri Supreme Court had earlier reached the same conclusion in *Rodriguez*. As in *Swadley*, the court held that the plaintiffs were not entitled to UIM coverage when the at-fault driver's vehicle did not meet the insurance policy's unambiguous definition of "underinsured motor vehicle":

> The contract between [the insurance company] and the [plaintiffs] clearly states that an underinsured motor vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." By their own admission, the [plaintiffs] acknowledge that [the at-fault driver's] liability insurance coverage was $50,000. Since [the at-fault driver's] coverage is equal to the limit of liability under the [plaintiffs'] policy, [the at-fault driver] was not an underinsured motorist as defined by the [plaintiffs'] policy.

*Rodriguez*, 808 S.W.2d at 382. Northington is not entitled to UIM coverage for the same reason – the at-fault driver's coverage here is equal to the $100,000 limit of UIM coverage under Northington's Policy, so the at-fault driver is not an underinsured motorist as defined by the Policy.

Northington urges me to not focus only on the Policy's definition of "underinsured motor vehicle," but to consider the definition against the Policy's Declarations and its Limit of Liability clause. Northington argues that when these

- 10 -

provisions are examined together, a conflict emerges because the Declarations – which are referenced in the Limit of Liability clause – promises UIM coverage of up to $100,000 with no qualifications, while the definition of "underinsured motor vehicle" takes the coverage away. Northington argues that this conflict renders the Policy ambiguous. I disagree.

The Policy's Declarations page shows that, with respect to Northington's insured vehicle, insurance coverage included "Underinsured Motorists" with a "Limit" of "$100,000 Each Person/$300,000 Each Accident." (ECF 1-1 at p. 5.)[2] The Declarations page also states that the Declarations "are a *part* of this policy" and "complete the policy" when taken "*with* policy forms and endorsements." (*Id.*) (Emphasis added.) Nothing in the Declarations page would lead an ordinary person of average understanding to believe that the Declarations themselves stood alone and were not subject to terms in the Policy and its endorsements, especially given the explicit language that the Declarations are only a part of the Policy and are not to be considered in isolation.

The reference to the Declarations in the Policy's Limit of Liability clause supports this conclusion. The Limit of Liability clause states that the "limit of liability shown in the Declarations for each person for Underinsured Motorists

---

[2] In their pleadings, Secura avers and Northington admits that Northington was driving the 2008 Chrysler Town and Country at the time of the accident.

Coverage is our *maximum* limit of liability for all damages" and, further, includes the circumstances under which this limit will be reduced. There is no express promise or language indicating that Secura will pay up to the Declarations' listed amount. Nor is there an express promise or language indicating that UIM insurance will be paid where the circumstances of the accident at issue do not trigger the coverage in the first place. Given that there is no inconsistency or contradiction between the Declarations page and other provisions of the Policy, there is no ambiguity. *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017).

Moreover, the Missouri Supreme Court has repeatedly recognized that "declarations 'are introductory only and subject to refinement and definition in the body of the policy[,]'" *Craig*, 514 S.W.3d at 617 (quoting *Peters v. Farmers Ins. Co.*, 726 S.W.2d 749, 751 (Mo. banc 1987)); and, further, that "declarations 'do not grant any coverage. The declarations state the policy's essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of coverage.'" *Id.* (quoting *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014)). *See also Estate of Hughes v. State Farm Mut. Auto. Ins. Co.*, 485 S.W.3d 357, 361-62 (Mo. Ct. App. 2016) (rejecting argument that a court should restrict policy interpretation "to a reading of the coverage outlined in the Declarations page without considering

the clear limitations and exclusions expressed in the Policy Booklet."). There is "nothing ambiguous or misleading about a policy that offers underinsured motorist coverage in a certain amount on its face sheet and then defines 'underinsured motor vehicle' as it is defined here." *Progressive Cas. Ins. Co. v. Morton*, 140 F. Supp. 3d 856, 867-68 (E.D. Mo. 2015).

There is nothing about the Declarations page here that would lead an ordinary person of average understanding to believe that it contains anything more than an "abbreviated form" of the Policy's "essential terms." *Todd*, 223 S.W.3d at 160; *Burger v. Allied Prop. & Cas. Ins. Co.*, 822 F.3d 445, 449 (8th Cir. 2016). Especially since it explicitly states that it is only part of the Policy and must be considered with the Policy forms and its endorsements. *Cf. Burger*, 822 F.3d at 449 (limit of liability set out on declarations page created no ambiguity where declarations page stated that several endorsements form part of the policy). Indeed, this language would lead such persons to believe that they must examine all provisions of the Policy to determine the entirety of their coverage.

In the absence of any misleading or confusing language contained in the Policy itself, I must not "unreasonably distort the language of a policy or exercise inventive powers for the purpose of creating an ambiguity where none exists." *Todd,* 223 S.W.3d at 163; *see also Morton*, 140 F. Supp. 3d at 868. Because there is no inconsistency or contradiction between the Declarations page and other

provisions of the Policy, no ambiguity arises from the Declarations. *Craig*, 514 S.W.3d at 617; *Rice v. Progressive Preferred Ins. Co.*, 228 F. Supp. 3d 903, 909 (E.D. Mo. 2017).

Northington also argues that ambiguity exists because the Limit of Liability provision promises coverage up to the Policy limit of $100,000 for "all damages," but then later restricts coverage by way of set-off, that is, paying only the difference between the Policy's UIM limit and that recovered from the at-fault driver. Northington claims that the all-damages-versus-set-off language "creates uncertainty and indistinctness in what and how much is covered by the UIM provision." (ECF 25 at ¶ 16.) The Missouri Supreme Court squarely addressed and rejected this same argument in *Swadley*, finding that the challenged language went to the *amount* of UIM coverage instead of whether there was any UIM coverage in the first place:

> The Swadleys, though, argue that, aside from the definition of "underinsured motor vehicle," the policy is ambiguous because it promises UIM coverage up to $100,000 but contains set-off provisions ensuring that Shelter will never be obligated to pay that full amount. But any ambiguity *as to the amount* of UIM coverage provided by this policy is irrelevant because such an ambiguity, if one exists, would not render this policy ambiguous *as to when* UIM coverage applies.

*Swadley*, 513 S.W.3d at 358 (emphasis in original). The same reasoning applies to Northington's argument here. UIM coverage is absent at the outset because there is no underinsured motor vehicle by definition. Accordingly, any arguable

- 14 -

ambiguity or uncertainty relating to the *amount* of UIM coverage as described in the Policy's Limit of Liability provision is not relevant to whether UIM coverage exists in the first place.

Finally, Northington argues that an ordinary person of average understanding would believe that the Policy's "Other Insurance" provision regarding "excess" coverage means that the Policy's UIM coverage is over and above any amount received from the at-fault driver. Northington claims that such over-and-above coverage conflicts with other Policy provisions that attempt to restrict or eliminate coverage (specifically, the definition of "underinsured motor vehicle" and the Limit of Liability provision). Relying on the Missouri Supreme Court's decisions in *Seeck* and *Ritchie*, Northington argues that this conflict in the Policy renders it ambiguous as to UIM coverage and that, construing this ambiguity in her favor, she is entitled to excess coverage up to the policy limit. For the following reasons, however, neither *Seeck* nor *Ritchie* applies to the "Other Insurance" provision of Northington's Policy.

The "Other Insurance" clause found to create ambiguity in *Ritchie* provided:

> Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage.

*Ritchie*, 307 S.W.3d at 137. And in *Seeck*, the "Other Insurance" clause provided:

> When an insured is occupying a motor vehicle not owned by the insured . . . this insurance is excess over any other insurance available

> to the insured and the insurance which applies to the occupied motor vehicle is primary.

*Seeck*, 212 S.W.3d at 132 (omission in *Seeck*). As written, these "Other Insurance" clauses appear to provide UIM coverage over and above that collected from the at-fault driver without qualification. Where other clauses of the relevant policy appear to limit liability and indicate that such coverage is not provided, the policy is considered to be ambiguous. *Id.* at 133-34. *See also Lutsky v. Blue Cross Hosp. Serv., Inc.*, 695 S.W.2d 870, 875 (Mo. banc 1985) ("If a contract promises something at one point and takes it away at another, there is an ambiguity.").

Unlike *Ritchie* and *Seeck*, the "Other Insurance" clause in Northington's Policy here contains no language that could arguably be considered as providing over-and-above UIM coverage without qualification. Instead, the Other Insurance clause states that any excess insurance provided "will apply only in the amount our underinsured motorists limit of liability exceeds the sum of the limits of liability of all other applicable insurance" and will be paid only "after all other applicable limits have been paid." This clause, by itself and when read in conjunction with the Policy as a whole, is not ambiguous. Its plain language limits excess payment to situations where the limits of liability of all other applicable insurance are less than the limit of liability for the UIM coverage under the Policy, which is consistent with the Policy's definition of "underinsured motor vehicle." *See Melton v. Country Mut. Ins. Co.*, 75 S.W.3d 321, 326 (Mo. Ct. App. 2002). The

language is also consistent with the Limit of Liability clause, which provides that any UIM coverage will be reduced by sums paid by or on behalf of persons legally responsible.

The Policy provided UIM coverage to Northington in the amount of $100,000 per person. Under the plain and unambiguous language of the "Other Insurance" provision, Northington's UIM coverage would be excess only if it exceeded the other insurance applied. It is undisputed that the insurance applied from Lomax totaled $100,000. Because the Policy's UIM limit of liability did not exceed the sum of the limits of liability of Lomax's applicable insurance, Northington is not eligible for excess UIM coverage. *Melton*, 75 S.W.3d at 326. The "Other Insurance" provision is not ambiguous, either within itself or when read with other clauses of the Policy.

Northington recently submitted to the Court a March 2019 letter from Secura describing changes to UIM coverage that will take effect upon Northington's renewal of her current policy. (ECF 38.) Some changes include changes to certain language at issue here. Northington contends that these changes constitute proof that the Policy contains ambiguities and, further, constitute Secura's admission of ambiguity.

The fact that Secura is making changes to a separate policy to be issued in the future and several years after the accident at issue is not relevant to this action.

If a contract is unambiguous, the intention of the parties and the legal import of the language of the contract cannot be varied by parol or extrinsic evidence. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 67 (8th Cir.1994) (applying Missouri law). For the reasons stated above, the Policy at issue here and applicable to the October 2013 accident is not ambiguous and the definition of "underinsured motor vehicle" is not satisfied. Any later changes Secura makes to its policy language have no effect on this determination. *See Morton*, 140 F. Supp. 3d at 871.

Because Northington is not entitled to UIM coverage under the unambiguous provisions of the Policy, Secura is entitled to judgment in its favor on its complaint and on Northington's counterclaim for policy coverage. Because Northington is not entitled to UIM coverage under the terms of the Policy, her breach-of-contract claim and vexatious-refusal-to-pay claim fail. *See BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 335 (8th Cir. 2013) (vexatious refusal claim must fail where insurer has no obligation to pay).

Northington's claims for fraud and unjust enrichment also fail. The basis for both claims is that Northington paid premiums to Secura based on its representations that it would pay under the Policy's UIM provision in circumstances Northington believed were covered, even though Secura never intended to pay. "The effect of underinsured motorist coverage is to assure [the insured] of receiving . . . the contracted amount of protection." *Rodriguez*, 808

S.W.2d at 383 n.1. It is not "harsh to enforce a contract between an insurer and insured that guarantees insured will recover, from some source, the amount of insured's damage up to the limit of UIM coverage." *Melton*, 75 S.W.3d at 327.

Here, although Northington claims that Secura committed fraud because it intended to breach the Policy and failed to honor the terms of the Policy, and further was unjustly enriched because it failed to uphold its end of the bargain and did not complete its promises under the Policy, the above discussion shows that there was no such breach and that Secura did not fail to fulfill any promises made under the Policy. That Northington is not entitled to UIM coverage for the October 2013 accident because the at-fault driver's coverage equaled her own does not demonstrate that Secura would not pay an amount of UIM coverage if required to do so under the unambiguous terms of the Policy.

Northington is not entitled to UIM coverage under the unambiguous provisions of the Policy, and Secura is entitled to judgment in its favor on its claim for declaratory relief and on Northington's counterclaim for coverage. Given that there is no UIM coverage under the unambiguous terms of the Policy, Northington's claims for breach of contract, vexatious refusal pay, fraud, and unjust enrichment also fail. I will therefore grant Secura's motion to dismiss those claims.

Accordingly,

**IT IS HEREBY ORDERED** that Secura Insurance's Motion for Summary Judgment [13] on the parties' claims regarding UIM coverage under the Policy is granted. Secura Insurance's Motion to Dismiss [12] the remaining claims in Janet Northington's counterclaim is granted.

**IT IS FURTHER ORDERED** that Janet Northington's Motion for Summary Judgment [25] is denied.

A separate Judgment is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 13th day of June, 2019.